IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIRECTV, INC., a California
corporation,

       Plaintiff,                    Case No. 03-688-HO

       v.                               ORDER

BOB ANDERSON, et al.,

       Defendants.

Plaintiff moves for default judgment against defendant Jerry Bowker, pursuant to Fed.R.Civ.P. 55(b). Plaintiff also moves for entry of a permanent injunction, and for an award of attorney fees and costs. The court previously granted plaintiff's motion for entry of default against Bowker. See Order dated January 12, 2004.

## Discussion

Upon default, the factual allegations of the complaint are

generally taken as true, except the allegations relating to damages. <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987). The court is not required to make detailed findings regarding liability. <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 889, 906 (9th Cir. 2002). The complaint alleges Bowker (1) received and/or assisted others in receiving plaintiff's satellite transmissions of television programming without authorization in violation of 47 U.S.C. § 605(a), (2) intentionally intercepted, endeavored to intercept or procured others to intercept or endeavor to intercept plaintiff's satellite transmissions of television programming using pirate access devices[1] in violation of 18 U.S.C. § 2511(1)(a), and (3) possessed and used pirate access devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of plaintiff's satellite transmissions of television programming, and that such devices or components thereof have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b). The complaint also contains more specific allegations as to how Bowker came into possession of two pirate access devices. Complaint, ¶ 9.

Based on these allegations, the court finds Bowker liable on

---

[1] The complaint defines "pirate access devices" as illegally modified DIRECTV access cards and other devices. Complaint at 2.

plaintiff's first and second claims alleging violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), respectively. Bowker is not liable on plaintiff's third claim for violation of 18 U.S.C. § 2512(1)(b). There is no private right of action for violation of this statute.

Where default judgment is possible based on sufficient allegations, the court retains discretion to grant or withhold judgment. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In this case, resolution on the merits is not possible, because Bowker has not appeared; the allegations of the first and second claims state claims upon which relief may be granted; there are no disputed issues of fact as a result of Bowker's non-appearance; and nothing suggests that Bowker's default is the result of excusable neglect. Default judgment is therefore appropriate. Id.

Upon finding a violation of Section 605(a), the court may grant an injunction on such terms it deems just to restrain future violations. 47 U.S.C. § 605(e)(3)(B)(i). A person whose communication is intercepted in violation of 18 U.S.C. § 2511(1)(a) may obtain an injunction. 18 U.S.C. § 2520(b)(1). Following these standards, Bowker is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2)

intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

Plaintiff seeks statutory damages in the amount of $20,000 for Bowker's violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). A party aggrieved by violation of Section 605(a) may recover statutory damages of not less than $1,000 or more than $10,000 for each violation as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). A party whose communication is intercepted may recover damages in a civil action. 18 U.S.C. § 2520(a). A court has discretion to award statutory damages for violation of 18 U.S.C. § 2511(1)(a), but if it chooses to do so it must award the greater of $100 a day for each day of violation or $10,000. 18 U.S.C. § 2520(c)(2).

Plaintiff submitted evidence that Bowker purchased equipment needed to receive DIRECTV's services on or about March 29, 1999, subscribed to premium DIRECTV programming until August, 2001, and purchased pirate access devices consisting of an "emulator" and an "unlooper," on or about April 9, 2001. Whalen Decl., ¶¶ 24-27. According to plaintiff's witness, an "emulator" is used in conjunction with a personal computer to "emulate" a DIRECTV access card, permitting the user to view all unauthorized DIRECTV programming without payment. Id., ¶ 28. An "unlooper" is used to restore functionality to disabled DIRECTV access cards. Id. ¶

29. The unlooper purchased by Bowker was shipped with "SU2 Code," software commonly known to be designed for the primary purpose of obtaining DIRECTV programming without authorization. Id., Ex. 2.

Plaintiff also submitted evidence of Bowker's post to an internet forum devoted to satellite television piracy. The post, dated April 28, 2002, reads, "I just purchased a combo package loader1 and would like to know what files will get me rolling. I have a rom3 card that worked until the keys rolled." Whalen Decl., Ex. 3 at 5. Plaintiff's witness states that Loader 1 specializes in the sale of pirate access devices and other equipment used to illegally receive DIRECTV signals, Bowker's post asks for assistance in obtaining software applications that would allow him to pirate DIRECTV's encrypted signals, and Bowker's statement that the rom3 card worked is an admission that Bowker used a DIRECTV access card that had been "hacked, and which permitted [Bowker] to pirate DIRECTV." Id., ¶ 49.

The Loader 1 device is not mentioned in the complaint, and there is no evidence Bowker successfully used that device to intercept DIRECTV signals without authorization. Nonetheless, the court finds from the preponderance of plaintiff's evidence that Bowker successfully intercepted plaintiff's signal after cancelling his subscription to plaintiff's programming.

Court's employ a variety of approaches in fixing the amount

of statutory damages for violation of 47 U.S.C. § 605(a). See DirectV v. Haskell, 344 F.Supp.2d 761, 763 (D.Me. 2004) (surveying approaches). In this case, there is no evidence of the number or frequency of interceptions by Bowker, what programming Bowker may have intercepted, or, by extension, the value of intercepted programming. There is evidence that Bowker's subscription cost $45 per month. Whalen Decl., ¶ 25. Approximately 22 months elapsed between the date Bowker cancelled his subscription and the date plaintiff filed the complaint. Lost subscription fees for this period are approximately $990. Based on this estimation and the lack of evidence of the programming Bowker may have received, the court exercises its discretion to award $1,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). The court finds that the $10,000 minimum award under 18 U.S.C. § 2520(c)(2) is excessive in this case, and declines to order statutory damages under that section.

Plaintiff is entitled to an award of reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii) (award mandatory); 18 U.S.C. § 2520(b)(3) (award discretionary). Plaintiff seeks attorneys' fees in the amount of $8,414.65, and costs in the amount of $417.31. The attorneys' fee request is based on hourly rates of $250 for Portland attorneys Long and Smith, admitted to practice in 1992 and 1991, respectively, $180 for Portland attorney Tarbox, admitted in 1999, $125 for paralegal Karnopp,

$60 for paralegals McCarthy and Ehlert, and $50 for paralegal Zochert. The attorney rates are somewhat higher than average rates for Portland attorneys with similar experience reported in the 2002 Oregon State Bar Economic Survey (13-15 years = $189, 10-12 years = $187, 4-6 years = $165). The higher rates are justified to compensate for inflation, and because plaintiff's attorneys have significant experience litigating the claims at issue. According to plaintiff, its attorneys have filed 52 lawsuits against 190 defendants on it's behalf. The court is handling several of these cases, and has observed that the claims are similar in many, if not all of the cases with which the court is familiar. The court therefore finds the hourly attorney rates to be reasonable.[2]

The number of hours expended, which the court calculated from plaintiff's submissions, is not reasonable.[3] By the court's calculation, plaintiff's fee request of $8,414.65 is based on the following number of hours expended by the following people: 4.517 hours by attorney Long, 3.01 hours by attorney Tarbox, 8.4 hours

---

[2] To calculate fees attributable to hours expended by paralegal Ehlert, the court will use the $60 per hour rate stated in attorney Smith's declaration, and not the $115 per hour rate implied in the billing information submitted by plaintiff. The former rate is stated under penalty of perjury, and is consistent, in the court's experience, with rates commonly charged for paralegal services.

[3] The court would be assisted in future cases by counsel providing the total number of hours claimed by each attorney or paralegal.

7 - ORDER

by attorney Smith, 2.782 hours by paralegal Karnopp, 2.79 hours by paralegal McCarthy, 36 hours by paralegal Ehlert, and .9 hours by paralegal Zochert. For comparison, the court notes that it has granted default judgments and attorney fees against fourteen defendants in nine cases filed by plaintiff. With one exception, the fee awards ranged between $1,955.33 (civil no. 03-1622-HO, defendant Skaggs) and $4,570.67 (civil no. 03-690-HO, defendant Trabosh). In civil case number 03-1233-HO, plaintiff sought more than $9,000 in attorney fees against defendant Le, and the court awarded $7,051.25. The court has surveyed published and unpublished decisions in which district courts awarded attorney fees in connection with default judgments against individual defendants in lawsuits filed by DIRECTV for unauthorized interception of its programming. Awards by this court in the $2,000 to $4,000 range are among the more generous awards. The more than $7,000 awarded by this court in 03-1233-HO appears exceptional.

By the court's calculation, plaintiff claims approximately 32.8 hours for paralegal Ehlert's work in reviewing Bowker's file or evidence pertaining to Bowker, and reviewing, revising, drafting or preparing documents in support of plaintiff's motion for default judgment and motion for attorney fees, and approximately 6.2 hours for attorney Smith's work in reviewing the evidence and documents, and revising the documents. The

amount of hours expended on preparing the motions for default judgment and attorney fees and supporting papers is unreasonable, considering that plaintiff's attorneys are able to utilize "economies of scale" in their production of documents. For example, papers filed by plaintiff in connection with the default judgment sought against Bowker in large part repeat verbatim the contents of documents filed by plaintiff to obtain a default judgment against defendant Le in 03-1233-HO, where the court awarded more then $7,000 in attorney fees. The motions in the two cases are nearly identical, save for the names, case numbers and amounts sought. The contents of the supporting memoranda in the two cases is also essentially identical, again save for the names, case numbers and amounts sought, and portions of the respective statements of uncontroverted facts unique to each defendant. The 25-page declaration of James Whalen filed by plaintiff in this case shares roughly 18 pages in common with the witness's 23-page declaration filed against defendant Le in 03-1233-HO.

Notwithstanding the foregoing, it is possible that the fee request is exceptionally large in this case not from the amount of time expended on preparation of documents, but from the amount of time expended reviewing evidence. Plaintiff's block-billing practice prohibits the court from reaching a conclusion either way regarding this possibility. See "Message from the Court re

9 - ORDER

attorney fee petitions," available at
<http://ord.uscourts.gov/attorney_fee_statement.pdf>.  The
evidence submitted unique to Bowker is not voluminous, and so
does not lead the court to this conclusion.  The evidence
consists of DIRECTV's account records for Bowker, a packing slip,
evidence of a single statement posted by Bowker on an internet
forum, and, as noted, less than five pages of the Whalen
declaration wherein the witness explains the evidence specific to
Bowker and the conclusions he draws from the evidence.  Whalen
Decl., ¶¶ 25, 27, 30, 46-49, Exs. 1-3.

Based on the evidence submitted, the court's experience with
similar cases, and the court's research, the court concludes that
one half the time claimed for Ehlert is reasonable for review of
evidence and preparation, review and revision of documents
submitted in connection with the default judgment and requested
relief in one half the time claimed.  The court further concludes
that one half the time claimed for attorney Smith's review and
revision of these documents is reasonable.  The court will
therefore disallow 16.4 hours claimed for Ehlert, and 3.1 hours
for attorney Smith.  The court thus awards attorney fees as
follows: for attorney Long, 4.517 hours at $250/hr, or $1129.25;
for attorney Tarbox, 3.01 hours at $180/hr, or $541.80; for
attorney Smith, 5.1 hours at $250/hr, or $1275.00; for paralegal
Karnopp, 2.782 hours at $125/hr, or $347.75; for paralegal

10 - ORDER

McCarthy, 2.79 hours at $60/hr, or $167.40; for paralegal Ehlert, 19.6 hours at $60/hr, or $1176.00; for paralegal Zochert, .9 hours at $50/hr, or $45. The total award is $4682.20.

The cost bill reflects costs expended for the filing fee (prorated), fees of the process server, photocopying, and subpoena fees. These costs appear reasonable, and are allowed.

## Conclusion

For the foregoing reasons, plaintiff's motion for default judgment and permanent injunction [#100], and motion for attorney fees and costs [#103] relating to defendant Jerry Bowker are granted to the extent provided herein.

Jerry Bowker is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2) intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

The clerk is directed to enter final default judgment against Jerry Bowker. The judgment shall provide that plaintiff shall take $1,000 in statutory damages on its claims, and that

///
///
///

McCarthy, 2.79 hours at $60/hr, or $167.40; for paralegal Ehlert, 19.6 hours at $60/hr, or $1176.00; for paralegal Zochert, .9 hours at $50/hr, or $45. The total award is $4682.20.

The cost bill reflects costs expended for the filing fee (prorated), fees of the process server, photocopying, and subpoena fees. These costs appear reasonable, and are allowed.

## Conclusion

For the foregoing reasons, plaintiff's motion for default judgment and permanent injunction [#100], and motion for attorney fees and costs [#103] relating to defendant Jerry Bowker are granted to the extent provided herein.

Jerry Bowker is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2) intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

The clerk is directed to enter final default judgment against Jerry Bowker. The judgment shall provide that plaintiff shall take $1,000 in statutory damages on its claims, and that

///
///
///

plaintiff shall recover from Jerry Bowker $417.31 in costs, and $4,682.20 in attorneys' fees for prosecuting this action.

IT IS SO ORDERED.

DATED this 30th day if August, 2005.

Michael R. Hogan
United States District Judge